FILED

2012 May-31  PM 01:07
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UVONNE DENESE BELL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:11-cv-2568-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Pro se plaintiff Uvonne Denese Bell ("Bell") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  In light of new evidence Bell submitted to the Appeals Council and which the Appeals Council failed to properly review, this court finds that the Commissioner's decision is not supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will **REVERSE** and **REMAND** the decision denying benefits to the Administrative Law Judge ("ALJ") for the ALJ to consider the new evidence and to reach a disability

determination based on the total record.

## I. Procedural History

Bell filed her application for Title XVI Supplemental Security Income

("SSI") on October 16, 2007, alleging a disability onset date of January 1, 2005.[1]

(R. 101).  Bell alleges that she is unable to work due to "migraine headaches,

bulging discs [in her back], [and pain in her] knees" (R. 121), and fibromyalgia,[2]

(R. 38).  After the SSA denied her application on February 22, 2008, (R. 57), Bell

requested a hearing on April 10, 2008, (R. 62), which she received on October 14,

2009, (R. 33).  At the time of the hearing, Bell was 33 years old, (R. 25), had a

high school education and two years of college, (R. 42), and past relevant work

that included light and unskilled work as a cashier, light and skilled work as a

color technician and hair stylist, and medium and unskilled work as a cook and

cleaner.  (R. 50-51).  Bell has not engaged in substantial gainful activity since

January 1, 2005.  (R. 23, 36).

On February 23, 2010, the ALJ partially denied Bell's claims by finding that

Bell was

'disabled' within the meaning of the [SSA] from January 1, 2005,

---

[1]Plaintiff originally alleged a disability onset date of October 16, 2007, (R. 121), but
subsequently amended the disability onset date to January 1, 2005, (R. 36).

[2]Bell alleged that she was disabled due to fibromyalgia at the hearing.  (R. 38).

> through November 13, 2007.  On November 14, 2007, medical
> improvement related to the ability to work occurred, and [Bell] has
> been able to perform substantial gainful activity from that date
> through the date of this decision.  Thus, [Bell's] disability ended on
> November 14, 2007.

(R. 19-20).  Bell submitted to the Appeals Council a Request for Review of the

ALJ's decision on April 26, 2010.  (R. 13).  A year later, on April 7, 2011, Bell

submitted to the Appeals Council additional evidence dated January 3, 2008,

through April 29, 2009, in support of her claim that contained for the first time

information regarding Bell's fibromyalgia impairment.  (R. 328-359).  Six weeks

later, on May 17, 2011, without explanation, the Appeals Council refused to grant

review.  (R. 1,5).  Bell then filed this action pursuant to section 1631 of the Act,

42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the

correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g)

and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental

impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrated by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.

20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in

sequence:

> (1)  whether the claimant is currently unemployed;
>
> (2)  whether the claimant has a severe impairment;
>
> (3)  whether the impairment meets or equals one listed by the Secretary;
>
> (4)  whether the claimant is unable to perform his or her past work; and
>
> (5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20

C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Plaintiff alleges disability because of pain, she must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[3]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective

---

[3] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

testimony supported by medical evidence that satisfies the pain standard is itself

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if

a claimant testifies to disabling pain and satisfies the three part pain standard, the

ALJ must find him disabled unless the ALJ properly discredits his testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the

ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for
> refusing to credit a claimant's subjective pain testimony, then the [ALJ], as
> a matter of law, has accepted that testimony as true.  Implicit in this rule is
> the requirement that such articulation of reasons by the [ALJ] be supported
> by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either

fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if

the ALJ's reasons are not supported by substantial evidence, the court must accept

as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

## IV.  The ALJ's Decision

The ALJ initially determined that Bell had not engaged in substantial

gainful activity since her alleged onset date, and therefore met Step One.  (R. 23).

Next, the ALJ acknowledged that Bell's severe impairments of "migraine

headaches, obesity, and mild degenerative joint disease of the right knee, lumbar

spine, and bilateral hips" met Step Two.  *Id*.  The ALJ found also that Bell's

overactive bladder was not severe because it was controlled by medication and that there is "no evidence supporting a finding that [Bell] has the medically determinable impairments of disc herniations or fibromyalgia." *Id*. The ALJ then proceeded to the next step and found that "[f]rom January 1, 2005, through November 13, 2007, the period during which [Bell] was disabled, [she] did not have an impairment or combination of impairments that met or medically equaled [a listed] impairment." *Id*. Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that

> from January 1, 2005, through November 13, 2007, [Bell] had the residual functional capacity ["RFC"] to perform sedentary work [ ] but experienced such frequent and severe headaches that she was unable to sustain even sedentary work activities in an ordinary work setting on a regular and continuing basis (i.e., eight hours daily, five days weekly, or an equivalent work schedule).

(R. 23-24). In light of Bell's RFC, the ALJ held that "[f]rom January 1, 2005, through November 13, 2007, [Bell] was unable to perform past relevant work." (R. 25). The ALJ then moved on to Step Five where he considered Bell's age, education, work experience, and RFC, and determined that "there were no jobs that existed in significant numbers in the national economy that [Bell] could have performed." (R. 25). As a result, the ALJ determined that Bell was disabled from

January 1, 2005, through November 13, 2007.  (R. 26).

However, the ALJ found further that beginning on November 14, 2007,

"medical improvement occurred," that Bell's disability ended, and that Bell had

the

> [RFC] to perform light work [ ] that requires no concentrated
> exposure to extremes of temperature, vibration, or humidity; no work
> at unprotected heights or around dangerous, moving equipment; no
> climbing of ladders, ropes, or scaffolds; and no more than occasional
> balancing, stooping, kneeling, crouching, crawling, or climbing of
> ramps or stairs.

(R. 26, 28-29).  In making this determination, the ALJ found that Bell's

"statements concerning her symptoms and their intensity, persistence, and limiting

effects are not credible to the extent that they are inconsistent with [Bell's RFC]."

(R. 27).  Specifically, the ALJ made several findings regarding Bell's alleged

impairments.  First, regarding Bell's back pain, the ALJ found that medical

imaging showed only "mild changes in her lumbar spine and hip," that

orthopaedist Dr. James Floyd's ("Dr. Floyd") examination was "unremarkable

aside from tenderness over the lower back," and that Bell failed to follow Dr.

Floyd's prescribed physical therapy and exercise program.  (R. 27).  Second, the

ALJ noted that consulting physician Dr. Charles Carnel ("Dr. Carnel") opined in

January 2008 that Bell had good range of motion in her back and "no evidence of

muscle spasms." *Id*.  Third, regarding Bell's knee pain, the ALJ noted that,

although Dr. Carnel found that Bell had "slightly reduced range of motion in both

knees" and walked with "slight limp that favored her right leg," Bell was "able to

squat to the floor fully and to rise," and that the February 2008 x-rays of her right

knee revealed only "early degenerative changes."  (R. 28).  Fourth, as it relates to

Bell's alleged urinary frequency, the ALJ determined that there was no evidence

that her condition is not satisfactorily remedied with prescribed medication.  *Id*.

Fifth, the ALJ held that Bell did not suffer from severe migraines after November

2007, and "has provided no evidence documenting any [emergency room] or

[primary care physician] visits for acute headaches after November 13, 2007."  *Id*.

Lastly, the ALJ determined that Bell's ability to perform daily activities of

shopping, driving, and the majority of the housework belies her contention that

she is disabled.  *Id*.

## V.  Analysis

The full extent of Bell's contention that the ALJ committed reversible error

is Bell's claim that she "still [has] the same problems that [she] had [through

November 13, 2007], and more."  Doc. 9 at 1.  To support her contention, Bell

attached to her brief undated letters from her son and a friend stating that they

have witnessed Bell's alleged disabling pain.[4]  Doc. 9 at 3 and 7.  This evidence

though does not address the critical issue of whether the ALJ committed reversible

error as Bell contends.  To reach this issue, the court must turn instead to the

record evidence after November 13, 2007, to ascertain whether the ALJ's decision

that Bell was not disabled beginning November 14, 2007, is supported by

substantial evidence.

A.    *Bell's Post November 13, 2007, Medical Evidence*

        The court notes that the ALJ awarded Bell SSI benefits for a closed period

because Bell was "frequently seen in the [emergency room] and/or by her [primary

care physician] with complaints of severe headaches."  (R. 28).  The ALJ,

however, found that Bell's disability ended on November 13, 2007, primarily

because Bell failed to present any medical evidence in support of her claims

through the date of the ALJ's decision.  Bell addressed this deficiency thereafter in

her petition to the Appeals Council and contends here that the post-November 13,

2007, medical evidence supports her contention that she is disabled.  Doc. 9 at 1.

In other words, to fully evaluate Bell's contentions, the court must review fully the

_____

        [4]42 U.S.C. § 404.1513(d) states that in addition to evidence from acceptable medical sources, the Commissioner "may also use evidence from other sources [i.e., "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy"] to show the severity of [the claimant's] impairment."

medical evidence she submitted to the Appeals Council.  In that regard, the record shows that the medical evidence after November 13, 2007, consists of Dr. Carnel's consultative examination and Bell's Cooper Green Hospital ("Cooper Green") treatment notes from January 2008 through April 2009.  These records show that on January 19, 2008, Dr. Carnel evaluated Bell's migraines, lower back and knee pain, and reviewed her disability records.  (R. 283).  Dr. Carnel's examination revealed that Bell has right knee "pain with joint range of motion" and "pain with barely touching the skin, particularly over the lumbar spine."  (R. 287).  Dr. Carnel diagnosed Bell with migraine headaches, "[l]ikely bilateral knee osteoarthritis. Cannot rule out right meniscal tear," and possible lumbar stenosis or S1 radiculitis.  *Id*.  Significantly, Dr. Carnel noted that Bell was "independent with all activities of daily living," that she cares for her kids, and that she does "60% of the cleaning, dishes, cooking and laundry."  (R. 284).

Further review of Bell's treatment notes reveals that on January 3, 2008, a radiograph of her urinary bladder was "unremarkable" and "normal."  (R. 359).  A week later, on January 10, 2008, Bell visited Cooper Green's emergency room complaining of a "migraine sinus infection."  (R. 354).  Although the treatment notes are illegible, they show that Cooper Green treated and discharged Bell that same day.  *Id*.  The next day, Dr. Robert Slaughter ("Dr. Slaughter") of Cooper

Green evaluated Bell for migraines that Bell claimed occurred 3-4 times per week and lasted three days to three weeks.  (R. 353).  Dr. Slaughter adjusted Bell's medications and scheduled her to return in three months.  *Id.*

The next month, on February 11, 2008, Bell visited The Work Place and received right knee radiographs.  Dr. James Lance interpreted the radiographs and determined that Bell had "early degenerative changes of the knee; however, the joint space appears preserved.  No acute abnormalities are apparent."[5]  (R. 289).

Two months later, on April 4, 2008, Bell returned to Cooper Green for migraine headache issues.  Dr. Khurram Bashir ("Dr. Bashir") evaluated Bell's complaints of migraine headaches, noted that Bell used Imitrex[6] twice daily, and modified Bell's medications after advising her "at length" that the "use of [certain medications] and Imitrex too often can cause medication overuse [headaches]."[7] (R. 349).  The next month, on May 12, 2008, Bell was evaluated at Cooper Green's clinic[8] and referred to the medicine clinic for evaluation of anemia, gastroesophageal reflux disease, high cholesterol, depression, bronchitis, and

---

[5]On March 20, 2008, Dr. Christine Heckemeyer ("Dr. Heckemeyer") evaluated Bell after a tonsillectomy.  (R. 350).

[6]Imitrex is used to treat symptoms of migraine headaches.

[7] Dr. Carol Leitner ("Dr. Leitner") evaluated Bell for anemia on May 6, 2008.  (R. 348).

[8]Several of the Cooper Green clinic notes do not indicate what physician evaluated Bell.

migraines.  (R. 346).  Then on June 19, 2008, Dr. Heckemeyer evaluated Bell for a

"[left] sided headache" and nausea that lasted four days and noted that Bell's

migraines were controlled by Stadol in the past, that Bell needed appointments

with the pain and neurology clinics, and prescribed Bell Maxalt[9] as needed for

migraines.  (R. 343).  Two months later, on August 28, 2008, Dr. Heckemeyer

evaluated Bell for chest pains, "migraines, hardly able to move (fibromyalgia,

bursitis)," and noted that Topomax[10] was ineffective for Bell's migraines and

confirmed that Bell had an appointment with the pain and neurology clinics.  (R.

341).

The next treatment note is five months later, on September 8, 2008, when

Bell visited Cooper Green's clinic for an evaluation of her fibromyalgia, back, hip,

knee and shoulder pain, and fatigue.  (R. 345).  Bell reported that she "tried to

exercise but [it] hurt too bad," and the clinic physician provided Bell information

regarding an aquatic program.  *Id*.   That same month, on September 19, 2008, a

physician at Cooper Green's neurology clinic evaluated Bell's migraines and

noted that they were unresponsive to most medications and, therefore, referred

Bell to a pain clinic.  (R. 344).  The pain clinic evaluation occurred on November

---

[9]Maxalt is used to treat symptoms of migraine headaches.

[10]Topomax is used to prevent migraine headaches.

6, 2008, when Dr. John Shuster ("Dr. Shuster") evaluated Bell for "shooting pains" that travel down to her knees and tenderness and numbness in her upper thighs. (R. 338). Dr. Shuster diagnosed Bell with chronic knee pain, "chronic neurogenic [headache] ([perscription] overuse [headache]," and scheduled Bell to return in four months.

Four months later, on February 11, 2009, Dr. Heckemeyer evaluated Bell and ordered a "CT of the head and neck [regarding Bell's] chronic headaches" and for Bell to return in two weeks. (R. 336). That same day, Bell received a radiograph of her cervical spine that was "normal." (R. 357). The next month, on March 20, 2009, Bell was evaluated at Cooper Green's neurology clinic for migraines, depression, fibromyalgia, and chronic bronchitis.[11] The treating physician noted that Bell's "[headaches] continue to be daily," and changed Bell's drug regimen. (R. 334). Ten days later, Dr. Shuster evaluated Bell at the pain clinic and diagnosed Bell with fibromyalgia, chronic headache, chronic knee pain, and obesity. Dr. Shuster recommended that Bell lose weight, reschedule her appointment with the counselor (Bell twice failed to show), and return for a follow up visit in four months. (R. 333). Finally, Bell's last visit occurred on April 29, 2009, during which Dr. Heckemeyer noted that Dr. Shuster had not prescribed Bell

---

[11]The treatment note listed a fifth diagnosis that was illegible.

any pain medications.  (R. 329).  Dr. Heckemeyer again ordered a CT scan of Bell's head[12] and increased Bell's Depakote[13] and Topamax.  *Id*.

B.    *Bell's urinary frequency, bulging disc, and knee pain are not disabling.*

Based on the court's review of the medical record, the ALJ's decision that Bell's urinary frequency, bulging disc, and knee pain are not disabling is supported by substantial evidence.  Bell's February 11, 2008, cystoscopy revealing "mild interstitial cystitis," (R. 332), and the December 5, 2008, ultrasound of Bell's kidneys that revealed "no lesion," (R. 358), support the ALJ's finding that Bell is not disabled due to urinary frequency.  Likewise, the record evidence undermines Bell's contention that she is disabled due to a bulging disc and right knee pain.  In fact, Bell's February 11, 2008, right knee radiograph revealed only "early degenerative changes" and no "acute abnormalities," (R. 289), and her February 11, 2009, cervical spine radiograph was "normal," (R. 357).  Moreover, Bell's activities of daily living, including shopping, household chores, and driving belie her contention that her right knee and bulging disc pain are disabling. (R. 48, 49, 284).  Therefore, as it relates to these impairments, the ALJ's decision is supported by substantial evidence.

---

[12]The CT scan results were not a part of Bell's record.

[13]Depakote is used to prevent migraine headaches.

C.    *The Appeals Council's decision regarding Bell's fibromyalgia and migraines is not supported by substantial evidence and remand is warranted.*

As it relates to Bell's allegation that she is disabled due to fibromyalgia and migraines, doc. 9 at 1, R. 38, the court notes that a claimant may present new evidence at each stage of the administrative process. *See* 20 C.F.R. §§ 404.900(b); *Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007).  Here, after the ALJ's decision, Bell supplemented the record by submitting medical evidence to the Appeals Council after her request for review.  (R. 13, 328).  Unfortunately, the record does not show that the Appeals Council fully considered the new evidence because the Appeals Council denied review and determined the additional evidence "does not provide a basis for changing the [ALJ's] decision," (R. 2).

"When a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it has *adequately evaluated* the new evidence.  If the Appeals Council merely 'perfunctorily adhere[s]' to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence and we must remand 'for a determination of [the claimant's] disability eligibility reached on the total record." *Flowers v. Comm'r*, 441 F. App'x 735, 747 (11th Cir. 2011), citing *Epps v. Harris*, 624 F.2d

1267, 1273 (5th Cir. 1980) ("In affirming the hearing decision, the Appeals

Council merely noted that it had considered the additional evidence submitted by

[the plaintiff] and found the ALJ's decision to be 'correct.'  [ ]  This failure [of the

Appeals Council to adequately evaluate the new evidence] alone makes us unable

to hold that the Secretary's findings are supported by substantial evidence and

requires us to remand this case for a determination of [Plaintiff's] disability

eligibility reached on the total record."); *see also Ingram*, 496 F.3d at 1267

("Because we conclude that the district court erred by not reviewing the decision

of the Appeals Council in light of [the new evidence], we reverse and remand for

the district court to undertake that review in the first instance.").

In light of the Appeals Council's failure to adequately evaluate Bell's new

evidence related to Bell's fibromyalgia and migraines, the court must remand this

matter to the ALJ to ensure that his decision is based on the total record.  Remand

is especially warranted here since various Cooper Green physicians diagnosed Bell

with fibromyalgia, (R. 333, 334, 341, 345), and referred Bell to a rheumatologist

regarding this condition, (R. 350), albeit without stating specifically what

symptoms or conditions it caused.[14]  Although the court notes that the Eleventh

---

[14]Remand is also warranted here as it relates to Bell's migraines because the evidence
after November 13, 2007, reveals that Bell visited Cooper Green's emergency room for a
"migraine sinus infection" headache on January 10, 2008, (R. 354), and, thereafter, sought
treatment for migraines from Cooper Green's clinics and physicians nine times, (R. 329, 333,

Circuit has held that fibromyalgia lacks objective evidence and is often diagnosed based on a claimant's subjective complaints of pain, *see Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("[Fibromyalgia's] hallmark is [ ] a lack of objective evidence" and "is generally diagnosed mostly on [an] individual's described symptoms."); *see also Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56 at 64-65 (11th Cir. 2010) ("[T]he nature of fibromyalgia itself renders . . . over-emphasis upon objective findings inappropriate."), citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (finding that the ALJ erred when he focused on objective evidence and failed to consider medical treatment and medications prescribed), the court defers to the ALJ to evaluate the medical evidence, along with Bell's complaints of low back, hip, shoulder, knee, and muscle pain, (R. 338, 341, 345, 346, 353, 350), fatigue, (R. 345, 346), and depression, (R. 334), to ascertain whether these conditions buttress Bell's fibromyalgia diagnosis and/or warrant a finding that Bell is disabled.

Whether this evidence of fibromyalgia and migraines is sufficient for a finding that Bell is disabled is a determination for the ALJ to make based on the relevant regulations.  This court makes no finding in that regard and states only that the failure of the Appeals Council to adequately evaluate the new evidence

334, 336, 341, 344, 346, 349, 353).

makes this court "unable to hold that the Secretary's findings are supported by substantial evidence." *Epps*, 624 F.2d at 1273.  In short, because the ALJ was not privy to the information regarding Bell's migraines and fibromyalgia when he rendered his decision, and the fact that the Appeals Council "perfunctorily" adhered to the ALJ's opinion when it denied review, this court has no basis to determine whether the ALJ's decision to deny benefits, as it relates to these two conditions, is supported by substantial evidence.  Therefore, remand is warranted for the ALJ to evaluate Bell's claim for disability based on the "total record."  *See Epps*, 624 F.2d at 1273.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Bell is not disabled is not based on substantial evidence.  Therefore, the Commissioner's final decision is **REVERSED** and **REMANDED** for the ALJ to make a disability determination based on the total record.  A separate order in accordance with the memorandum of decision will be entered.

Done the 31st day of May, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE